# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action Number _____

Chad M. Sayler,
     Plaintiff

v.

Vargo and Janson PC, a Colorado Professional Corporation;
Gerald P. Vargo, an individual;
Yosy V. Janson, an individual;
Matthew Berumen, an individual;
John P. Vargo, an individual;
     Defendants

---

## COMPLAINT

---

COMES NOW, the Plaintiff, CHAD M. SAYLER, (hereafter "Plaintiff") by counsel, and for his complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual, punitive and statutory damages, costs and attorneys fees brought pursuant to the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Fraud, and Civil Conspiracy.

### JURISDICTION AND PARTIES

2.    Jurisdiction to decide this matter arises from 28 U.S.C. 1331 15 U.S.C. 1692, et seq, and 15 U.S.C. 1681, et seq. This court has supplemental jurisdiction to hear the Plaintiff's

state law claims pursuant to 28 U.S.C. 1367 because they arise from the exact same transactions and occurrences.

3.     Venue is proper in the District of Colorado because the Defendants are located in Colorado, Defendants transact business in Colorado, and the Plaintiff is a Colorado resident.

4.     Chad M. Sayler ("Sayler") resides in Larimer County, Colorado and is an individual consumer as that term is defined in the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA).

5.     Vargo and Janson PC ("V & J") is a Colorado Professional Corporation with its principal place of business located in Lakewood, Colorado.

6.     Gerald P. Vargo ("Vargo") is an individual person who primarily conducts business from Lakewood, Colorado.

7.     Yosy V. Janson ("Janson") is an individual person who primarily conducts business from Lakewood, Colorado.

8.     Matthew Berumen ("Berumen") is an individual person who primarily conducts business from Lakewood, Colorado.

9.     John P. Vargo ("JP") is an individual person who primarily conducts business from Lakewood, Colorado.

## FACTUAL ALLEGATIONS

10.    Plaintiff's father, Stanley Sayler opened up a credit card with U.S. Bank.

11.    Stanley Sayler used said U.S. Bank credit card for his own personal use.

12.    Stanley Sayler experienced financial difficulties, defaulted on said U.S. Bank credit card account, and eventually filed a voluntary chapter 7 bankruptcy petition.

13.     U.S. Bank charged-off Stanley Sayler's credit card account and eventually sold the charged-off account to a "junk debt buyer."

14.     Eventually, Stanley Sayler's U.S. Bank credit card account wound up in the hands of Marshall Recovery LLC.

15.     V & J filed a proof of claim in Stanley Sayler's bankruptcy case on behalf of Marshall Recovery, LLC.

16.     As recently as April 2010, V & J began reporting the debt on Stanley Sayler's credit report, and V & J reported on said credit report that the account was an "individual account" in spite of the fact that V & J is not even a creditor of either Stanley Sayler or Chad Sayler.

17.     After the U.S. Bank account was discharged in Stanley Sayler's bankruptcy case, the Defendants decided that they would hold the Plaintiff liable for Stanley Sayler's U.S. Bank account in spite of the fact that Plaintiff was never a co-signor on the account.

18.     On August 31, 2010, Defendants V & J, Vargo, Janson, and Berumen drafted a lawsuit against the Plaintiff entitled "Verified Complaint" which alleged that the Defendants represented an entity "Marshall Recovery LLC."

19.     The August 31, 2010 complaint against Plaintiff alleged that Marshall Recovery LLC had purchased the U.S. Bank account and that Plaintiff owed Marshall Recovery LLC $14,480.39, plus interest, attorney fees, and costs.

20.     The August 31, 2010 complaint contained a sworn statement under oath by Defendant Berumen that he had personal knowledge that Plaintiff owed the debt, that the

cardholder agreement authorized an award of attorney fees, and that a copy of the cardholder agreement had been sent to Plaintiff at or before the extension of credit.

21.    The August 31, 2010 complaint also alleged that Plaintiff was liable to Marshall Recovery LLC under the family purpose doctrine in spite of the fact that Plaintiff is Stanley Sayler's son, not his spouse.

22.    On September 7, 2010, the August 31, 2010 complaint was served upon Plaintiff.

23.    The Plaintiff is informed and on that basis alleges that on or around September 8, 2010, Defendants Berumen, Vargo, and Jansen, solicited John Vargo to sign a false affidavit uttering personal knowledge that Plaintiff had used the U.S. Bank credit card, that the cardholder agreement was mailed to Plaintiff, and that Plaintiff was in fact liable for the U.S. Bank credit card.

24.    On September 8, 2010, Defendant John Vargo signed an affidavit uttering material falsehoods that he had "personal knowledge" of the account balance, that Plaintff was in fact liable for the U.S. Bank credit card, that funds were advanced to Plaintiff upon request, that the interest rate was 31.4%, that Plaintiff had no setoffs, and that a copy of the cardholder agreement was mailed to Plaintiff.

25.    On September 10, 2010, Defendant Berumen filed the August 31, 2010 complaint and summons with the Larimer County Court.

26.    On September 10, 2010, Defendant Berumen filed Defendant John Vargo's perjured affidavit of indebtedness with the Larimer County Court.

4

27.     On September 10, 2010, Defendant Berumen filed the following documents with the Larimer County Court:  proof of claim documents to allegedly show a chain of title, debtor spreadsheet, and a cardholder agreement.

28.     The Cardholder Agreement that Defendant Berumen filed was meant to imply that it was a duplicate copy of Stanley Sayler's cardholder agreement.

29.     The Cardholder Agreement that Defendant Berumen filed was for borrowers who had accounts with *U.S. National Bank of Oregon*, but Stanley Sayler's credit card was with *U.S. Bank National Association ND.*

30.     According to documents publicly available at the FDIC's website, U.S. National Bank of Oregon is a totally separate entity from U.S. Bank National Association ND.

31.     On September 10, 2010, "David" from Vargo & Janson PC called the Plaintiff and left a voicemail on the Plaintiff's phone. David failed to advise the Plaintiff that he was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

32.     On September 15, 2010, Plaintiff returned "David's" phone call and David informed Plaintiff that he was calling about the lawsuit that the Defendants had recently served Plaintiff with.  David informed Plaintiff that the account was a "joint account" with Stanley Sayler, which was a false and untrue statement by David.  At no time during the September 15, 2010 conversation between the Plaintiff and David did David inform Plaintiff that he was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

33.     The voicemail that "David" left on Plaintiff's phone on September 10, 2010 was the "initial communication" as that term is defined in the FDCPA.

34.     None of the Defendants sent Plaintiff the notice required by 15 U.S.C. 1692g within five days of September 10, 2010, or at any date prior thereto.

35.     On September 29, 2010, Plaintiff filed a motion to dismiss the complaint that had been filed against him, alleging *inter alia*, that the wrong party had been sued.    Defendants refused to dismiss the case, and pressed forward with their spurious claims.

36.     On October 6, 2010, Plaintiff filed an answer to the Defendants' complaint against him.

37.     On October 13, 2010, the Larimer County Court ordered a pre-trial conference to be held on January 21, 2011.

38.     On January 21, 2011, a pre-trial conference was in fact held between Plaintiff and Defendant Berumen, which was witnessed by Peter Blake.

39.     On January 21, 2011, Plaintiff held a discussion with Defendant Berumen in a conference room.  Defendant Berumen failed to advise Plaintiff that he was a debt collector and that any information obtained would be used for that purpose.  Defendant Berumen also falsely advised Plaintiff that he was in fact liable for the account, that it was a "black and white" case, and that a signature is not required to open a credit card account, which is contrary to the Truth in Lending Act.  Defendant Berumen also falsely advised Plaintiff that credit card companies are not required to keep any documents, which is contrary to both the Truth in Lending Act and Colorado Consumer Code.

40.   On March 18, 2011, Plaintiff and Defendant Berumen held another pre-trial conference in a conference room.   Defendant Berumen became startled that Plaintiff was recording the conversation and advised Plaintiff that he needed Defendant Berumen's consent in order to record.   Defendant Berumen then proceeded to state that his client reviewed the evidence in the case and now wanted to dismiss the case.   At no time during the March 18, 2010 conversation did Defendant Berumen advise Plaintiff that he was a debt collector attempting to collect a debt and any information obtained would be used for that purpose.

41.   During the March 18, 2011 conversation, Defendant Berumen informed Plaintiff that he would file a motion to dismiss the case.

42.   On April 15, 2011, instead of filing a motion to dismiss the case, Defendant Berumen filed a Notice to Set the case for Trial.

43.   On April 28, 2011, Plaintiff called Defendant Berumen to check on the status of the motion to dismiss the case.   Defendant Berumen switched positions and informed Plaintiff that his client would not be filing a motion to dismiss the case because they were afraid he would object to it.   At no time during the April 28, 2011 conversation did Defendant Berumen inform Plaintiff that he was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

44.   Eventually, the Defendants dismissed the case against Plaintiff without prejudice, but refused to compensate Plaintiff for the damages their spurious lawsuit had caused him.

45.   The Defendants' conduct caused Plaintiff actual damages in the form of emotional distress.   Specifically, his wife gave birth ten (10) days after he was served with the bogus lawsuit by the Defendants which caused him not to be able to spend time with his new

7

born child because he had to deal with the Defendants' outrageous lawsuit.  Further, he had to take time off of work to respond to the lawsuit, he incurred transportation costs driving back and forth to the court house, and was required to pay filing fees.  He lost sleep because he was worried that he would be found liable for a debt that is not even his, he worried that his wages would be garnished and that he would not be able to provide for his wife and newborn child. The lawsuit strained his relationship with his father and mother, who had recently filed bankruptcy, and were unable to pay the debt.

46.     As a result of the Defendants' violations of the FDCPA, Defendants are liable to the Plaintiff for actual damages to be proven at trial, maximum statutory damages of $1,000, together with reasonable attorney fees and costs of litigation.

## COUNT I, FAIR DEBT COLLECTION PRACTICES ACT
### Against Matthew Berumen only

47.     Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

48.     Defendant Berumen is a "debt collector" as that term is defined in the FDCPA because he regularly attempts to collect debts allegedly due to Marshall Recovery LLC through the use of the mails, internet, telephones, and court systems.

49.     Defendant Berumen violated the FDCPA in the following ways:

a. Misrepresenting the character, status, and amount of the debt on August 31, 2010 by falsely claiming that Plaintiff owed Marshall Recovery LLC $14,480.39, plus interest, attorney fees, and costs, when in fact Plaintiff was not even a co-signor on Stanley Sayler's U.S. Bank credit card account.  Furthermore, as late as April 2010, V & J had reported to the credit bureaus that the amount of the debt was

approximately $17,000. On information and belief, Defendant Berumen decided to falsify the amount of the debt by intentionally lowering the amount to below $15,000 so that the Larimer County Court would have jurisdiction to hear the case instead of the District Court so that Berumen could avoid mandatory discovery and motions practice. *Cf CCRCP 307 & 316.*

b. Violating Rule 3.7 of the Colorado Rules of Professional Conduct on August 31, 2010 in that Defendant Berumen attempted to act as a witness in the case against Plaintiff by "verifying" the complaint. Defendant Berumen's "verification" of the complaint was performed in anticipation of Marshall Recovery LLC obtaining a default judgment against Plaintiff and Defendant Berumen hoped that the Larimer County Court would rely on his "verification" as actual evidence in awarding a default judgment.

c. Falsely claiming on August 31, 2010, that Defendant Berumen had personal knowledge that U.S. Bank had mailed a copy of the cardholder agreement for Stanley Sayler's U.S. Bank card to Plaintiff. On information and belief, Defendant Berumen has never worked for U.S. Bank, was not present when said mailing allegedly took place, had no knowledge of whether said mailing allegedly took place, but nevertheless swore under oath to the Larimer County Court that said mailing had in fact taken place.

d. Falsely alleging on August 31, 2010 that Plaintiff was liable for Stanley Sayler's U.S. Bank credit card under Colorado's Family Purpose Doctrine when in fact

Plaintiff is Stanley Sayler's son and did not even reside with Stanley Sayler when the debt was incurred.

e.  On information and belief, soliciting Defendant John Vargo to commit perjury on September 8, 2010 by signing a false affidavit that Plaintiff was liable for the U.S. Bank credit card, *inter alia*.

f.  Filing Defendant John Vargo's false affidavit on September 10, 2010 with the Larimer County Court.

g.  Filing a cardholder agreement on September 10, 2010 which was falsely represented to have been the actual agreement, but in fact was not even for the same bank that Defendant Berumen's client had allegedly purchased the account from.

h.  Failing to inform Plaintiff that he was a debt collector and that any information obtained would be used for that purpose during the January 21, 2011 conversation.

i.  Violating Rule 4.3 of the Colorado Rules of Professional Conduct by giving Plaintiff legal advice on January 21, 2011 by falsely informing him that he was liable for the account, falsely informing him that the Truth in Lending Act does not allow banks to retain records nor require a signature to open a credit card account, that it was a "black and white" case, and that a contract is not required for a credit card account.

j.  Failing to inform Plaintiff during the March 18, 2011 conversation that he was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

k.  Falsely stating that he would file a motion to dismiss the case during the March 18, 2011 conversation, but instead setting the case for trial a few weeks thereafter.

l.  Falsely advising Plaintiff on March 18, 2011 that Plaintiff needed to inform him if he was recording the conversation which is contrary to Colorado law.

m.  Failing to inform Plaintiff that he was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose during the April 28, 2011 conversation.

n.  Violating Rule 311 of the Colorado County Rules of Civil Procedure by filing a complaint against Plaintiff which had no basis whatsoever in fact or law and by failing to perform an independent analysis of the facts and law prior to affixing his signature on the August 31, 2011 verification of the complaint.

### COUNT II, FAIR DEBT COLLECTION PRACTICES ACT
### Against Gerald P. Vargo and Yosy V. Janson only

50.  Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

51.  Defendant Vargo and Defendant Janson are "debt collectors" as that term is defined in the FDCPA because they regularly attempt to collect debts allegedly due to Marshall Recovery LLC through the use of the mails, telephones, internet, and court systems.

52.  Defendants Vargo and Janson violated the FDCPA in the following ways:

a. Allowing their names to be included on the August 31, 2010 complaint against Plaintiff, which contained numerous material falsehoods, i.e. that Plaintiff owed Marshall Recovery LLC $14,480.39 plus fees, that Plaintiff was liable for the U.S. Bank credit card, that a copy of the cardholder agreement was mailed to Plaintiff, and that Plaintiff was liable for Stanley Sayler's debts under the family purpose doctrine.

b. On information and belief, Soliciting Defendant John Vargo to commit perjury on September 8, 2010 by signing a false affidavit that Plaintiff was liable for the U.S. Bank credit card, *inter alia.*

c. Objecting to Plaintiff's motion to dismiss the case on April 15, 2011 because Defendant Janson did not want to pay Plaintiff any money in spite of the fact that Defendant Janson approved and authorized the frivolous lawsuit against Plaintiff.

d. On information and belief, directing Defendant Berumen to file a fake cardholder agreement and to represent to the Larimer County Court that said cardholder agreement was in fact mailed to Plaintiff and was in fact the cardholder agreement between the parties, when in truth and reality, the cardholder agreement was for the wrong bank, and there never was an agreement between Plaintiff and U.S. Bank for the credit card in question.

## COUNT III, FAIR DEBT COLLECTION PRACTICES ACT
### Against John P. Vargo only

53.     Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

54.    Defendant John P. Vargo is a "debt collector" as that term is defined in the FDCPA because he regularly attempts to collect debts allegedly due another through the use of the mails, telephones, internet, and court systems.

55.    Defendant John P. Vargo violated the FDCPA in the following ways;

   a.  Committing perjury on September 8, 2010 by signing a false affidavit that he had personal knowledge that Plaintiff was liable for the U.S. Bank credit card, that Plaintiff requested credit to be advanced on his behalf in the amount of approximately $14,400, that U.S. Bank mailed a copy of the credit card agreement to Plaintiff, and that Plaintiff had no setoffs.  Defendant John P. Vargo did not review a credit application, he never worked for U.S. Bank, he had no idea whether U.S. Bank did in fact mail a card holder agreement to Plaintiff, he had no idea of whether Plaintiff requested credit to be extended, but nevertheless, Defendant John Vargo swore that he had personal knowledge of the aforesaid facts.

### COUNT IV, FAIR DEBT COLLECTION PRACTICES ACT
**Against Vargo & Janson PC**

56.    Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

57.    Defendant Vargo & Janson, PC is a "debt collector" as that term is defined in the FDCPA because they regularly attempt to collect debts allegedly due another through the use of the mails, telephones, internet, and court systems.

58.    Defendant Vargo & Janson, PC violated the FDCPA in the following ways:

a. Failing to send Plaintiff the required notice within five (5) days of September 10, 2010 as required by 15 U.S.C. 1692g.

b. Failing to advise Plaintiff in its September 10, 2010 voicemail that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

c. Failing to advise Plaintiff in the September 15, 2010 phone conversation with Plaintiff that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

d. Defendant Vargo & Janson PC is liable for the FDCPA violations committed by defendants Berumen, Vargo, Vargo, and Janson under the doctrine of respondeat superior because all of them were acting under the direct control of the corporation, within the scope of their employment, and were acting to benefit the corporation.

## COUNT V, FRAUD
### Against Defendants Berumen and John Vargo

59.     Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

60.     On August 31, 2011, Defendant Berumen made numerous false representations in his "verified complaint", to wit, that Defendant Berumen affirmed that Plaintiff owed Marshall Recovery LLC money, that U.S. Bank had in fact mailed a cardholder agreement to Plaintiff, and that the cardholder agreement provided for attorney fees and costs.

61.     Defendant Berumen's false statements on August 31, 2011 were made with knowledge of their falsity for the purpose of obtaining a judgment against the Plaintiff.

62.    On September 8, 2010, Defendant John Vargo placed his signature upon a perjured affidavit by which Defendant John Vargo falsely swore that he had personal knowledge that Plaintiff had requested credit to be extended by U.S. Bank, that U.S. Bank had in fact extended said credit, that a copy of the cardholder agreement had been mailed to Plaintiff, and that Plaintiff owed Marshall Recovery LLC.

63.    Defendant John Vargo's false statements on September 8, 2010 were made with knowledge of their falsity to deceive the Larimer County Court into entering a judgment against Plaintiff.

64.    Plaintiff actually relied on Defendant Berumen and Defendant John Vargo's false statements by filing numerous motions to dismiss the case, an answer, and making numerous attempts to prevent judgment from entering against him.

65.    Plaintiff's reliance was reasonable under the ordinary person standard.

66.    Defendant Berumen and Defendant John Vargo's false statements caused the Plaintiff actual damages in the form of emotional distress, lost wages, transportation fees, postage fees, court filing fees, and copying fees.

67. Punitive damages against Defendant Berumen and Defendant John Vargo are appropriate to deter future intentional misconduct in an amount to be determined at trial.

## COUNT VI, CIVIL CONSPIRACY
### Against Defendants Berumen, Gerald Vargo, Yosy Janson, and John Vargo

68. Plaintiff incorporates, and re-alleges the above paragraphs as if fully set out herein.

69. On information and belief, Defendants Berumen, Gerald Vargo, Yosy Janson, and John Vargo conspired and had a meeting of the minds that they were going to unlawfully

attempt to collect the U.S. Bank credit card account from Plaintiff because Defendant Gerald Vargo does not like Stanley Sayler and wanted to seek revenge upon him by pursuing Plaintiff for the debt. Plaintiff bases the foregoing allegations on the fact that Defendant Gerald Vargo was rude and disrespectful to Stanley Sayler and implied that Stanley Sayler was similar to Mr. Cratchit in *A Christmas Carol*. Defendant Berumen also informed Plaintiff that he and his father were "comical" during the January 21, 2011 conversation.

70. In furtherance of the civil conspiracy, Defendant Berumen offered to falsely "verify" the complaint on August 31, 2010 by which Defendant Berumen falsely swore to have knowledge of things that he did not have.

71. In furtherance of the civil conspiracy, Defendant John Vargo committed perjury by offering a false affidavit on September 8, 2010 by which Defendant John Vargo falsely swore to have knowledge of certain information, which he did not have and which was totally false.

72. The Plaintiff is informed and on that basis alleges that Defendants Gerald Vargo, Janson, and Berumen solicited John Vargo to sign the perjured affidavit for the purposes of creating false evidence for the Larimer County Court to rely upon in order to obtain a judgment against the Plaintiff.

73. The Plaintiff is also informed and on that basis alleges that Defendants Gerald Vargo, Janson, and Berumen took part in assisting John Vargo to draft the substantive portions of the false affidavit.

16

74. The formation of the civil conspiracy by the Defendants caused the Plaintiff actual damages in the form of emotional distress, lost wages, transportation fees, postage fees, court filing fees, and copying fees.

75. Punitive damages against all Defendants are appropriate in this case in order to punish and deter any future misconduct by these Defendants.

## COUNT VII, FAIR CREDIT REPORTING ACT (FCRA)
### Against Vargo and Janson PC

76. Plaintiff incorporates and re-alleges the above paragraphs as if fully set out herein.

77. On December 3, 2009, V & J pulled a copy of the Plaintiff's Experian credit report and alleged that its permissible purpose was "collection."

78. On December 27, 2010, V & J pulled a copy of the Plaintiff's Experian credit report and alleged that its permissible purpose was "collection."

79. Pursuant to 15 U.S.C. 1681b, a consumer reporting agency is prohibited from furnishing a consumer report to a person who lacks a permissible purpose.

80. Pursuant to 15 U.S.C. 1681b(a)(3)(A), a consumer report may be used in connection with a credit transaction involving the consumer and involving collection of an account of the consumer.

81. Under 15 U.S.C. 1681b(f), a person is prohibited from obtaining a credit report on a consumer unless the person has a permissible purpose for procuring the report and certifies that purpose to the consumer reporting agency.

82. V & J did not have a permissible purpose in obtaining the Plaintiff's Experian credit reports on 12/3/2009 and 12/27/2010 because the Plaintiff was only an authorized user and did not initiate a credit transaction with U.S. Bank.

83. Experian is a "consumer reporting agency" within the meaning of the FCRA.

84. In connection with its actions of obtaining the Plaintiff's credit report unlawfully, V & J acted willfully, knowingly, and in conscious disregard for the rights of the Plaintiff under the FCRA.

85. In connection with its actions of obtaining the Plaintiff's credit report unlawfully, V & J falsely certified to Experian that it was pulling Plaintiff's report to collect against the Plaintiff, which was unlawful because the Plaintiff was simply an authorized user on the account. Accordingly, V & J obtained the Plaintiff's credit report through false pretenses within the meaning of 15 U.S.C. 1681n(b).

86. As a result of V & J's willful practice of violating the FCRA, V & J is liable under 15 U.S.C. 1681n for punitive damages in an amount sufficient to deter V & J from engaging in this kind of illegal practice in the future.

87. As a result of V & J's willful practice of violating the FCRA, V & J is liable under 15 U.S.C. 1681n for the costs of bringing this action as well as reasonable attorney's fees.

WHEREFORE, the Plaintiff prays for the following relief:

   a.  A jury trial on all issues so triable;

   b.  For actual damages in an amount to be proven at trial;

18

c.  For punitive damages against Vargo & Janson PC for its willful violations of the FCRA and for punitive damages against the individual Defendants for their role in the fraud and civil conspiracy;

d.  For statutory damages of $1,000.00 together with reasonable attorney fees and costs pursuant to 15 U.S.C. 1692k;

e.  For statutory damages of $1,000 together with reasonable attorney fees and costs pursuant to 15 U.S.C. 1681n;

f.  For an order holding all Defendants jointly and severally liable as joint tort-feasors;

g.  For such other relief as is deemed proper;

Respectfully submitted this 5th day of August, 2011.

MATTHEW R. OSBORNE, P.C.

s/ Matthew R. Osborne
Matthew R. Osborne, #40835
2055 S. Oneida St, Ste 370
Denver, CO 80224
(303) 759-7018
matthewosbornelaw@gmail.com

Attorney for Plaintiff

**PLAINTIFF DEMANDS TRIAL BY JURY**